OPINION AND JUDGMENT ENTRY.
This accelerated appeal comes to us from a summary judgment issued by the Lucas County Court of Common Pleas in a legal malpractice action. Because genuine issues of material fact exist, we conclude that the trial court erred in granting summary judgment, and we reverse its decision.
In 1995, appellant, Daniel R. Kehlmeier, retained appellee, James E. Morgan, a partner in the law firm then known as Brown, Schlageter, Craig 
Shindler[1] to prepare a promissory note for a loan to James Crandall, a home construction contractor. To secure the note, appellee suggested the use of a second mortgage on property deeded in the names of James Crandall and his wife Abby Crandall. Appellant allegedly indicated that Mid-Am National Bank ("Mid-Am") held a first mortgage on the property in the amount of $104,000.[2] Appellant expressed his desire to loan James an additional $24,000 as an investment in the construction of a residence on the property. The terms of the note were that appellee would complete the construction by November 1995 and sell the home by May 16, 1996. Upon the sale of the home, as payment and release on the note and mortgage, appellant would receive a certain percentage of the sale price.
On May 15, 1995, the note and mortgage were executed; they were, however, signed only by James Crandall. Abby Crandall's name was typed on the mortgage document to "release dower interest" in the real estate, but her signature was not obtained on either document.
James Crandall failed to complete construction. At some point in 1996, appellant became aware of an impending foreclosure proceedings by Mid-Am. Appellant called appellee on October 28, 1996, allegedly to ask for advice on the foreclosure action. In early 1997, Mid-Am formally began foreclosure upon the property. Appellant, through this action, learned that the recorded first mortgage to Mid-Am had actually been $131,000. Two mechanics' liens had also been filed against the property.
Ultimately, the property was sold at sheriff's sale for $130,000 which was paid to Mid-Am as first mortgage holder. Appellant and the remaining lien-holders were unable to collect anything as to their claims. In addition, James filed for bankruptcy and all liability to appellant on the note was discharged.
On October 24, 1997, appellant filed a complaint for legal malpractice against appellee and appellee's former law firm. Appellant alleged that appellee failed to check the title record, failed to obtain the signatures of both owners of the subject property on the note and mortgage, negligently handled the note and mortgage transaction, and provided legal services which were below the accepted professional standard of care. Appellant further alleged that, as a result of appellee's acts while in the course of employment by his former law firm, appellant suffered the loss of the full amount of the note plus interest.
On September 18, 1998, appellees moved for summary judgment based upon the statute of limitations and the fact that appellant could not prove any damages. The assertion that appellant could prove no damages was made because the subject property was sold for less than the first mortgage and the note was discharged in bankruptcy. The court denied summary judgment as to the statute of limitations issue, but granted summary judgment as to the second issue. The court also noted that appellant had failed to specifically plead that he would not have made the loan if appellee had apprised him of the true amount of the first mortgage. Finally, the court ruled that appellant failed to establish that appellee's conduct fell below an accepted standard of care, because appellant did not produce expert evidence.
Appellant now appeals that judgment, setting forth the following two assignments of error;
"Assignment of Error No. 1
 "The trial court erred when it granted summary judgment to the defendant on the issue of damages when an affidavit was filed by the plaintiff stating that had he known that the amount of the first mortgage was $131,000.00 and not $107,000.00 as supposed, he would not have loaned the money.
"Assignment of Error No. 2
 "The trial court erred when it held that plaintiff's claim would fail for lack of expert evidence when that issue wasn't raised by the defense and, even for purposes of the summary judgment motion only, the issue of malpractice was assumed."
Appellees have cross-appealed, setting forth one assignment of error:
 "THE TRIAL COURT ERRED WHEN IT HELD THAT PLAINTIFF'S CLAIMS WERE NOT BARRED BY THE STATUTE OF LIMITATIONS."
 I.
We will first address appellees' cross-assignment of error.
Appellees claim that the cause of action accrued on May 15, 1995 — the date that appellant received copies of the note and mortgage. R.C.2305.11(A) provides that the statute of limitations for bringing a legal malpractice action is one year after the cause of action accrued. The cause of action accrues and the
 "statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later. [Citation omitted.]" Zimmie v. Calfee, Halter Griswold (1989), 43 Ohio St.3d 54, syllabus. See also Landis v. Hunt (1992), 80 Ohio App.3d 662.
In this case, there was nothing in either document to put appellant on notice of a possible problem resulting from the failure to perform a title check. Likewise, the mere absence of the wife's signature from the note and mortgage on property would not have necessarily put the average layperson on notice that anything was legally amiss. Consequently, the average layperson would not have known of the need to pursue remedies against appellee simply by looking at the documents.
In our view, the "cognizable event" occurred when appellant was made aware that his second mortgage was affected by the incorrect but discoverable amount of the first mortgage and that missing signatures of Abby Crandall might be a problem. According to appellant, he became aware of these issues on October 28, 1996, the day he called appellee for creditor advice in the threatened foreclosure and bankruptcy action against James Crandall. Appellant alleges that it was then that appellee told him there might be a problem collecting from Abby Crandall on the note. Since appellant filed his malpractice action on October 24, 1997, within the one year limitations period, the trial court properly denied appellees' motion for summary judgment as to the statute of limitations issue.
Accordingly, appellees' cross-assignment of error is not well-taken.
 II.
We will address appellant's assignments of error in reverse order. Appellant, in his second assignment of error, argues that the trial court erred in ruling that he needed to present expert testimony as to professional standards of care in order to withstand appellees' motion for summary judgment.
The standard of review for summary judgment is the same for both a trial court and an appellate court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Summary judgment will be granted if "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact" and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).
It is well established that the elements of an actionable legal malpractice claim are: (1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by that breach. State ex rel. Sellers v. Gerken (1995), 72 Ohio St.3d 115, 117. When a defendant in a legal malpractice action moves for summary judgment and presents expert testimony or evidence as to the issue of standard of care in support of his motion, the plaintiff must then respond with expert testimony to establish that the defendant's conduct fell below such standards of care. See Bloom v. Dieckman (1983), 11 Ohio App.3d 202, 203.
In this case, appellees based their summary judgment motion solely on one defense: that appellant could not establish damages, since he would not have received any proceeds from the foreclosure or bankruptcy. Although not admitting fault, appellees made no argument and put forth no evidence in the form of expert testimony that attorney Morgan's actions did not constitute malpractice. Thus, appellant was not required, on summary judgment, to put forth evidence to establish that fact as it remained unchallenged for summary judgment purposes. Therefore, the trial court erred in stating that appellant was required to present such evidence.
Additionally, we note that the trial court stated that appellant was required to raise in the complaint the specific claim that appellant would not have made the loan had appellee ordered title work, examined it and discovered the true amount of the first mortgage. However, under Ohio's "notice pleading," a plaintiff need only give reasonable notice of the claim. State ex rel. Harris v. Toledo (1995), 74 Ohio St.3d 36,37. Civ.R. 8 requires that sufficient operative facts be concisely set forth in a claim so as to give fair notice of the nature of the action. DeVore v.Mutual of Omaha Ins. Co. (1972), 32 Ohio App.2d 36, 38. It permits as many claims for relief, legal or equitable, to which a party may be entitled under the operative facts in the statement of claim. Id.
In this case, appellant's complaint specifically alleged "the legal advice and services rendered to him by the Defendant, James E. Morgan was negligent and departed from the accepted standard [of] care and that Defendant inexpertly handled this note and mortgage transaction * * *." Appellant also responded to the motion for summary judgment by affidavit stating that he would not have made the loan had he been apprised of the status of the first mortgage. In our view, appellant's complaint provided sufficient notice to appellee to include such a claim. Therefore, the trial court erred when it determined that appellant's complaint was not specific enough to include his claim regarding the examination of title work prior to executing the note and mortgage.
Accordingly, appellant's second assignment of error is well-taken.
 III.
Appellant, in his first assignment of error, claims that the trial court erred in granting summary judgment because appellant was unable to prove damages. Appellant contends that, for purposes of summary judgment, he did establish sufficient damages regarding appellee's failure to order and review title work on the Crandall property, failure to actually perfect a second mortgage, and failure to obtain Abby Crandall's signature on the mortgage and note.
As we previously noted, in order to defeat a motion for summary judgment, the plaintiff must present facts going to the following which establish (1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by that breach. State ex rel.Sellers v. Gerken, supra. When construed in favor of the non-moving party, if evidence is presented as to each element of a claim, the grant of summary judgment is improper. See Civ.R. 56.
In this case, appellees' motion for summary judgment addressed only whether appellant could show damages as it related to appellant's inability to collect on the note and mortgage due to the foreclosure and bankruptcy. Had appellant asserted no other claims, we would agree that summary judgment was proper. However, appellant did, in fact, allege other claims which stem from the initial performance of legal services which would have allegedly prevented his loss of the $24,000 and other damages. The record reveals that genuine issues of material fact remain as to the malpractice issues and damages sustained as a result of appellant's claim that he would not have made the $24,000 loan had appellee reviewed title work at the time the mortgage and note were signed. Material facts also remain in dispute as to the damages alleged as a result of the failure to obtain Abby Crandall's signature on the note and mortgage. Therefore, for purposes of summary judgment, we conclude that material facts remain in dispute as appellant's claims and damages regarding the initial preparation of and the omission of Abby's signature on the mortgage and note.
Accordingly, appellant's first assignment of error is well-taken.
The judgment of the Lucas County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion. Court costs of this appeal are assessed to appellees.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Peter M. Handwork, P.J. JUDGE
 _______________________________ James R. Sherck, J. JUDGE
 _______________________________ Richard W. Knepper, J. JUDGE
CONCUR.
[1] The law firm is also an appellee in this appeal. Where the word "appellee" appears in text, however, it refers only to Attorney Morgan.
[2] Some parts of the record state that the amount was thought to be $107,000.