DECISION AND JUDGMENT ENTRY
{¶ 1} This accelerated appeal is from the January 18, 2007 judgment of the Lucas County Court of Common Pleas, which dismissed the complaint of appellants, Survivor Doe and Spouse Doe, on various grounds. Upon consideration of the assignments of error, we affirm in part and reverse in part the decision of the lower court. Appellant, Survivor Doe and Spouse Doe, protected identities, assert the following assignments of error on appeal: *Page 2 
 {¶ 2} "ASSIGNMENT OF ERROR NO. 1
 {¶ 3} "The Trial Court Erred In Its Application of the Statute ofLimitations Rule To Grant the Defendant's Motion to Dismiss.
 {¶ 4} "ASSIGNMENT OF ERROR NO. 2
 {¶ 5} "The Trial Court Erred In Proceeding to Consider WhetherPlaintiff Should Have Known Her Abusers's Identity Through `ReasonableDiligence.'
 {¶ 6} "ASSIGNMENT OF ERROR NO. 3
 {¶ 7} "The Trial Court Erred in Failing to Identify and Apply aStandard for `Reasonable Diligence.'
 {¶ 8} "ASSIGNMENT OF ERROR NO. 4
 {¶ 9} "The Trial Court Erred When It Based the Dismissal Upon MultipleAssumptions.
 {¶ 10} "ASSIGNMENT OF ERROR NO. 5
 {¶ 11} "The Trial Court Erred By Disregarding Plaintiffs RepressedMemories."
 {¶ 12} On April 20, 2005, appellant, filed a complaint against appellees, Gerald Robinson, Gerald Mazuchowski, the Catholic Diocese of Toledo ("Diocese"), St. Adalbert Parish and School, Oblates of St. Francis DeSales, Inc., John and Jane Does 1-15 (yet unknown individuals and/or unnamed defendants who participated, permitted, encouraged, fostered, approved, sanctified, condoned, engaged in, or ratified the actions of Robinson and Mazuchowski), and Catholic Entity Does 1-5 (additional institutions, organizations, parishes, schools, or other entities which participated, permitted, *Page 3 
encouraged, fostered, approved, sanctified, condoned, engaged in, or ratified the actions of Robinson and Mazuchowski).
 {¶ 13} Appellants alleged that Survivor Doe had been the victim of "clerical ritual and sexual abuse" as a child beginning when she was a student at St. Adalbert School by persons she later discovered to be Robinson and Mazuchowski and that the Diocese and other appellees involved aided and abetted or covered up the actions of these priests and protected the priests while dissuading all such victims and their families from seeking action against them.
 {¶ 14} Appellant alleged the following claims against appellees: a continuing pattern of corrupt activity in violation of R.C. 2923.32; assault; battery; sexual battery; negligent or intentional infliction of emotional distress; negligent retention, supervision, and/or entrustment; vicarious liability and respondeat superior; breach of fiduciary duty; fraud and/or negligent misrepresentation; negligence per se; strict liability; conspiracy; and loss of consortium.
 {¶ 15} Appellees Catholic Diocese of Toledo, St. Adalbert Parish and School, and the Oblates of St. Francis DeSales, Inc. moved to dismiss the complaint. Appellees Robinson and Mazuchowski moved to adopt the motion to dismiss and memorandum in support. Appellees argued that all of the claims in the complaint are barred by the applicable statutes of limitation and that the complaint should also be dismissed on other grounds. *Page 4 
 {¶ 16} The trial court granted the motion to dismiss with prejudice finding that the fraud and/or negligent misrepresentation claim was not stated with the required particularity; that the claims of negligent misrepresentation, consortium, and the constitutionality of Senate Bill 80 were not sufficiently pled; and that the remaining claims are barred by their applicable statutes of limitation, which began to run when Survivor Doe turned 18. Only the issue of the dismissal of claims based upon the statute of limitations has been appealed.
 {¶ 17} A complaint may be dismissed, pursuant to Civ.R. 12(B)(6), for "failure to state a claim upon which relief can be granted." The court must find that the plaintiff cannot prove any set of facts that warrant recovery. O'Brien v. Univ. Community Tenants Union, Inc. (1975),42 Ohio St.2d 242, 245. Often, the application of a statute of limitations involves a mixed question of law and fact. Therefore, the court may dismiss the complaint pursuant to Civ.R. 12(B)(6) only if it can determine from the face of the complaint that the action is barred by the statute of limitations. Doe v. Archdiocese of Cincinnati,109 Ohio St.3d 491, 2006-Ohio-2625, ¶ 11. The court must accept all of the factual allegations of the complaint as true and construe all reasonable inferences in favor of the plaintiff. Mitchell v. Lawson Milk Co.
(1988), 40 Ohio St.3d 190, 192. Under notice pleading requirements of Civ.R. 8(A)(1), the plaintiff only needs to plead a sufficient set of facts to support recovery under his claims. He is not required to plead the operative facts with particularity. Therefore, the complaint only needs to set forth the facts necessary to put the defendant on notice of the general claim. It is not necessary *Page 5 
that all of the facts needed to overcome a statute of limitations defense be specifically pled. Mills v. Deehr, 8th Dist. No. 82799,2004-Ohio-2338, ¶ 10. We review the trial court's ruling on this type of motion under a de novo standard of review. Perrysburg Twp. V.Rossford, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.
 {¶ 18} We begin, as the trial court did, by examining whether the underlying alleged crimes are barred because they are the bases for the other claims against the parties. In counts two, three, and four of their complaint appellants asserted claims of battery, sexual battery, and assault. Survivor Doe alleged that Robinson and Mazuchowski perpetrated the sexual abuse upon her and caused her apprehension by the manner in which they approached her before committing these crimes and that the Diocese, Oblates, and St. Adalbert, and other unknown individuals intentionally, negligently, or reckless aided and abetted such crimes.
 {¶ 19} Survivor Doe specifically alleges that the crimes began to occur while she was attending St. Adalbert from 1968 through 1972. She was kidnapped against her will and "held either against her will or by beguilement in the basement of St. Adalbert's." While being held there, she was used in elaborate, ritualistic ceremonies. The people perpetrating the crimes were dressed in nun habits and referred to themselves with the first name of a woman and then their own name. Robinson called himself "Mary Jerry" and Mazuchowski called himself "Carrie Jerry." Appellant has recalled suppressed memories of another yet unknown man who was referred to as Sue. *Page 6 
 {¶ 20} After appellant left St. Adalbert school, the abuse continued in a wooded area. Her mother, who also participated in the ceremonies, took her to them. Appellant was intimidated from disclosing the events of all of the satanic ceremonies at the time they occurred because the perpetrators threatened to kill her if she told, caused her to believe that she was Satan's child, and demoralized her.
 {¶ 21} As a result of the abuse, appellant developed "confusion, various coping mechanisms and systems of psychological disorders, including great shame, guilt, self-blame, depression, repression, and disassociation. As a result, [Survivor Doe] was unable to immediately perceive or know that the conduct of [appellees] Robinson and Mazuchowski was wrongful or abusive * * *." Furthermore, she alleged that her early indoctrination in the Roman Catholic Church prevented her from realizing that these were crimes that had been committed against her. She further relied upon the indoctrination of the Roman Catholic Church and the representations of these appellants that these priests were "in good standing" and that appellees would protect children in the parish from any criminal misconduct. She alleged that she never could have thought that a priest could commit such crimes. Even after she realized that these acts were wrongful, she assumed that she was at fault. She further alleged that "even after [she] became aware of the criminal nature of [the] conduct, that knowledge alone was not sufficient to apprise her or put her on notice of [appellees] Diocese, Oblates, and St. Adalbert's possible negligence in failing to protect her or of their possible involvement in a conspiracy to conceal that criminal conduct from herself and others." *Page 7 
 {¶ 22} Survivor Doe alleged that she first recognized Robinson as "Mary Jerry" after seeing news coverage of his arrest or investigation reported on April 23, 2004. Appellant recognized Mazukowski as "Carrie Jerry" after learning of his involvement in the satanic rituals through an investigative news story appearing in The Toledo Blade on February 20, 2005.
 {¶ 23} Appellees asserted that these claims of battery, sexual battery, and assault are barred by the statute of limitations. The trial court agreed and dismissed these claims against all the appellees. The trial court concluded that Survivor Doe had sufficient facts from which she could have, with reasonable diligence, investigated these crimes and asserted her causes of action within one year of her eighteenth birthday.
 {¶ 24} As to appellee Robinson and Mazuchowski, the court held that while appellants alleged that Survivor Doe did not know the identity of her abusers until 2004 and 2005, she had "knowledge that her own mother participated in the abuse and had a `close relationship' with her abusers. Accordingly, she had knowledge of one of her abusers, even though [Survivor Doe] chose not to name her mother in the suit for reasons not pled." In other words, the trial court held that because a child victim of sexual abuse knew that her mother was involved, we must presume that she had knowledge of the identities of the abusers and that the victim had a duty to gather the information from her mother who participated in the abuse.
 {¶ 25} Furthermore, as to all of the other appellees, the court held that Survivor Doe should have known that she had a cause of action against them because she was *Page 8 
abused during the time period when she was attending St. Adalbert School, the crimes occurred in the basement of that school (until they were moved to the woods), the perpetrators were dressed like nuns, and the crimes presumptively occurred during school hours (an inference made from the allegations of the complaint since the time of the abuse was not alleged).
 {¶ 26} Finally, the court noted that Survivor Doe did not allege repressed memories. However, Survivor Doe alleged that one of the nicknames of a perpetrator had been suppressed until she heard the name again and that the abuse caused psychological harm, including repression. Furthermore, while Survivor Doe alleged that she did not realize that the acts of the men were criminal until much later, she did not indicate when this realization came.
 {¶ 27} In their first, second, third, fourth, and fifth assignment of error, appellants argue that the trial court erred in finding that the statute of limitations barred these claims and erred in its application of the discovery rule.
 {¶ 28} Generally, the statute of limitations applicable for this case are as follows: for sexual battery, one year (former R.C. 2305.111, eff May 14, 2002); for bodily injury caused by negligence, two years (former R.C. 2305.10, eff. April 7, 2005); and for vicariously liability/derivative liability, the same time limit as the statute of limitations for the underlying action. Doe v. First United MethodistChurch, 68 Ohio St.3d 531, 1994-Ohio-531, 537. If the plaintiff was a minor at the time the cause of action arose, the statute of limitations applicable is tolled until the minor plaintiff reaches the age of 18. *Page 9 
R.C. 2305.16. The gate keeping functions behind such statutes were fully discussed in Doe v. Archdiocese of Cincinnati, 109 Ohio St.3d 491,2006-Ohio-2625, ¶ 11. Those functions include: "(1) ensuring fairness to the defendant, (2) encouraging prompt prosecution of causes of action, (3) suppressing stale and fraudulent claims, and (4) avoiding the inconveniences engendered by delay-specifically, the difficulties of proof present in older cases." Id. at ¶ 10.
 {¶ 29} However, the discovery rule provides that "a cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he or she has been injured by the conduct of the defendant." Ault v. Jasko, 70 Ohio St.3d 114,115-116, 1994-Ohio-376. Generally, the purpose of the discovery rule is to limit the "unconscionable result to innocent victims who by exercising even the highest degree of care could not have discovered the cited wrong. By focusing on discovery as the element which triggers the statute of limitations, the discovery rule gives those injured adequate time to seek relief on the merits without undue prejudice to * * * defendants." Id. at 116 citing Oliver v. Kaiser Community HealthFound. (1983), 5 Ohio St.3d 111. The discovery rule must be specially tailored to the particular context to which it is to be applied."Norgard v. Brush Wellman, Inc., 95 Ohio St.3d 165, 2002-Ohio-2007, ¶ 10
citing Browning v. Burt (1993), 66 Ohio St.3d 544, 559. This rule of law has been extended to sexual abuse cases. Doe v. First UnitedMethodist Church, 68 Ohio St.3d 531, 1994-Ohio-531, 538, and Ault v.Jasko, supra at 117. *Page 10 
 {¶ 30} The Supreme Court of Ohio has held that: "A minor who is the victim of sexual abuse has one year from the date he or she reaches the age of majority to assert any claims against the perpetrator arising from the sexual abuse where the victim knows the identity of the perpetrator and is fully aware of the fact that a battery has occurred."Doe v. Archdiocese of Cincinnati, 109 Ohio St.3d 491, 2006-Ohio-2625, citing Doe v. First United Methodist Church, supra at paragraph two of the syllabus. Both of these cases involved boys who were sexually abused during their teenage years by a priest or teacher known to them and the boys knew at the time of the abuse that it was wrongful.
 {¶ 31} The only exception made to this general rule has been in cases involving repressed memories of a child of sexual abuse. Ault v.Jasko, 70 Ohio St.3d 114, 1994-Ohio-376, paragraphs one and two of the syllabus ("2. The one-year statute of limitations period for sexual abuse in Ohio begins to run when the victim recalls or otherwise discovers that he or she was sexually abused, or when, through the exercise of reasonable diligence, the victim should have discovered the sexual abuse.") Under this case, the court reasoned that such cases are no different than criminal cases where the corpus delicti in a child abuse or neglect case is not deemed "discovered" until "a responsible adult, as listed in R.C. 2151.421, has knowledge of both the act and the criminal nature of the act." Id. at 117.
 {¶ 32} The Supreme Court of Ohio has also held that the defendant could be estopped from relying upon the statute of limitations if the plaintiff can demonstrate that misstatements of fact were made or other specific actions were taken that prevented the *Page 11 
victim from timely bringing suit. Doe v. Archdiocese of Cincinnati,109 Ohio St.3d 491, 2006-Ohio-2625, ¶ 45.
 {¶ 33} The trial court in the case before us concluded that this case fits within the holdings of Doe v. Archdiocese of Cincinnati, supra, andDoe v. First United Methodist Church, supra, and that appellant sat on her rights too long. The trial court reasoned that appellant should have known that the perpetrators were priests employed by the diocese or investigated that possibility because the perpetrators were dressed like nuns, the torture began in the church/school basement, the torture occurred during school hours (an inference taken from the facts alleged) and appellant's mother later participated in her abuse. We find that making such inferences based upon the barebones allegations of the complaint goes beyond the requirements of prior caselaw. We find that facts alleged do not support an inference that Survivor Doe should have known who the perpetrators were long before the time appellants filed suit.
 {¶ 34} The majority noted in dicta in Doe v. First United MethodistChurch, supra, that the Doe case was not a case involving a young child, repressed memories, or a psychological disability. Therefore, we conclude that these prior cases were tightly drafted to apply only to cases where the victim knew the perpetrators, knew who employed them, and knew that the actions of the perpetrator were wrong. In those cases, the victims asserted that they did not realize that they would have a claim against the employer institutions because they believed that they were the only victims. The *Page 12 
Supreme Court of Ohio held that such a reason was insufficient to toll the running of the statute of limitations. This is not the type of case before us today.
 {¶ 35} In the case before us, we find significant the following distinguishing facts alleged by appellants that make this case unique from other clerical abuse cases: (1) Survivor Doe did not know who the perpetrators were until she recognized their face/names from the television and newspaper reports about them (it is not clear from the complaint whether it was the faces or only the nicknames that appellant recognized); (2) the perpetrators successfully controlled Survivor Doe during the abusive years by threatening to kill her if she told, causing her to believe that she was Satan's child, demoralized her, and including her mother in the abuse; (3) the abuse psychologically impaired Survivor Doe to the extent that she did not immediately perceive or know that the conduct of the perpetrators was wrongful or abusive (the complaint does not set forth the time when Survivor Doe came to realize that a crime had been committed against her, and it is improper for the trial court to infer that it was before she was 18 years of age), and (4) Survivor Doe never even considered that the perpetrators could be priests or that their conduct would be known to and protected by the Diocese because of her indoctrination in the Roman Catholic Church belief that priests are divinely chosen as representatives of God and the parish is a protector of children.
 {¶ 36} We conclude that appellants set forth sufficient facts explaining why they could not bring the underlying claims at an earlier time to avoid a Civ.R. 12(B)(6) dismissal. The allegations made by appellants and reasonable inferences therefrom do *Page 13 
not support a finding that the underlying claims are barred by the statute of limitations. Whether or not the discovery rule is applicable to this case is an issue that can only be addressed after further facts are put in evidence. We find that the trial court erred by dismissing the claims of appellants' complaint based upon the expiration of the statute of limitations.
 {¶ 37} Also, in their first and second assignments of error, appellants argue that the trial court erred by interpreting the discovery rule as providing for a two-part test. They argue that the plaintiffs may either show that Survivor Doe knew the perpetrators or that she could have discovered who they were through reasonable diligence. We disagree.
 {¶ 38} The discovery rule focuses on whether the plaintiff had the facts necessary to realize that a cause of action existed. Norgard v.Brush Wellman, Inc., 95 Ohio St.3d 165, 2002-Ohio-2007, ¶ 17. Therefore, the rule requires the court to consider whether the plaintiff knew that she had a cause of action or reasonably should have known.
 {¶ 39} Accordingly, we find appellants' first and second assignments of error are well taken in part and not well-taken in part as discussed above.
 {¶ 40} In their third, fourth, and fifth assignments of error, appellants argue that the trial court erred by adopting a standard of "reasonable diligence" without defining the standard. As a result, they argue that the standard imposed by the trial court was too strict. They contend that the trial court in essence required Survivor Doe to determine that she had a cause of action when even the police had been unable to infiltrate the *Page 14 
records of the Roman Catholic Church concerning Robinson. Appellants also argue that the trial court erred when it made inferences or assumptions based upon the allegations in the complaint.
 {¶ 41} Due diligence is "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." Black's Law Dictionary (8Ed.Rev.2004) 488. The existence of due diligence is a factual finding by the trial court that must be supported by the record. In the context of the discovery rule, the due diligence requirement ensures that the "plaintiff bear[s] some meaningful, affirmative responsibility to determine facts that would form the basis for his or her cause of action." Collins v. Sotka (1998), 81 Ohio St.3d 506, 512, (Moyer, J. dissenting).
 {¶ 42} We do not find that the trial court employed an incorrect standard in this case. Rather, we find that the trial court's finding of a lack of due diligence went beyond the facts alleged in the complaint and ignored other facts that were alleged.
 {¶ 43} Therefore, we find appellants' third assignment of error not well-taken and their fourth and fifth assignments of error well-taken.
 {¶ 44} In their sixth assignment of error, appellants argue that the trial court erred when it found that appellants failed to allege that Survivor Doe had repressed memories. We agree. Appellants asserted that Survivor Doe did not recognize the perpetrators until she heard the newscast many years later. Furthermore, she alleged that the crimes caused her psychological harm, including "repression." While the complaint does not set forth *Page 15 
great detail regarding which memories were repressed, the allegation was sufficient to satisfy the requirements of notice pleading. Therefore, we find appellant's sixth assignment of error well-taken.
 {¶ 45} Having found that the trial court did commit error prejudicial to appellants, the judgment of the Lucas County Court of Common Pleas is reversed in part and affirmed in part as discussed above and remanded to the trial court for further proceedings. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
 Peter M. Handwork, J., Arlene Singer, J., William J. Skow, J., CONCUR. *Page 1